The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right, the first case we'll call this morning is the United States v. Glover and Mr. DeSimone. Thank you, Your Honor. May it please the Court, I'm Andy DeSimone and I represent Nathan Glover. I plan to focus on Issue 1, the District Court's error in applying the four-level enhancement for burglary, but I'm here for the Court to answer any of its questions as to any of the issues. Mr. Glover objected to the PSR's allegations that he lacked consent to enter the House from either occupant. That put the government on notice that it had to prove those facts. The probation officer even wrote in the PSR, quote, the government should be prepared to present evidence at sentencing. And at sentencing, Mr. Glover renewed the objection and testified that Miranda Mullen gave him permission to be there. So in the words of this Court's decision in United States v. Terry, Mr. Glover thereby articulated the reason why the facts in the PSR were untrue and inaccurate, and as a result, the government could no longer rely on those allegations. The government knew it had to prove those facts, and here it just did not. If the government had that evidence, this would not have been a hard thing to do. The government could have asked its witness, Mabry, whether Glover had consent to be in his house. The government could have called Mullen to testify as to whether she gave permission to Glover to be there. The government could have called a police officer to recount statements. I think I know the answer to this, but I wasn't able to find something as clearly on point as I would have liked. Do we know under North Carolina law whether consent or lack thereof is an element of the offense of burglary or an affirmative defense? It's an element of the offense. What's the clearest expression you've been able to find that's said? I don't know if the North Carolina Supreme Court has ever overtly said that. I tend to think you're right, but what's the best evidence of that? I think the clearest case is State v. Boone from the North Carolina Supreme Court. Talking about when the statute was enacted, it imported as an element that the breaking or entering must be without consent. And that's then discussed in Mungro. So you think just to—I mean, one way to view the record in this case is before the sentencing court. Does he have consent or not? I don't know. Like, right, based on the evidence before me, one possible interpretation is it's impossible to determine whether he has— That's why I asked about the burden of proof. Like, who does that hurt if a record just doesn't tell me whether he had consent or not? Right. Here it was the government's burden, and there just was no evidence because they could not rely on the PSR at that point. But a few factual points I also want to clarify. Why can't they rely on the PSR? Because the probation officer wrote in there what Mabry told the police, that she did not give consent. Why can't the court rely on that? Well, Your Honor, first, the only testimony about what Mabry told police was that he reported the theft of his firearm, not that he reported a breaking or entering. That's actually Joint Appendix page 43. But more to the sort of legal underpinnings of your question, once—under Terry, once the defendant objects to a factual statement in the PSR and then goes further and demonstrates that those facts are inaccurate or untrue, the PSR is not evidence at that point. The government must independently prove those allegations. And we objected to paragraph 8, which contains what Your Honor just referenced. So we objected to all facts related to the consent on that day. What is the basic basis of that decision in Terry? Is that due process? Is it—I mean, sentencing courts are allowed to rely on hearsay, right? There's no constitutional problem with relying on hearsay at sentencing. So what is the basis of this notion that once the defendant objects, the government can't just rely on the PSR? Sorry, the defendant. Right, right. Well, while hearsay may be admissible, it's not just automatically admissible, the evidence has to be reliable because there's a due process requirement to reliable introduction of evidence. And I think it derives from there. I mean, it's more clearly delineated in the Pourbaix and Martinez cases, and there are multiple cases from all over the circuits about this situation. I think they didn't get there in Terry because the defendant didn't go far enough. The defendant only merely objected to the PSR, didn't do anything to show that the facts in the PSR were untrue and inaccurate. So that's weird. I mean, that's really weird, right? I mean, I could imagine a world in which you're not allowed to rely on the PSR at all. I can imagine a world where you're allowed to rely on the PSR in the absence of an objection. Again, as a matter of, like, due process or the rules of evidence, I don't—candidly, not—we're bound by Terry, so I guess I'm saying I'm not sure that makes a lot of sense. I tend to agree with you on that. I think it's too much of a burden to put on the defendant, but I gladly accept it in this case because we clearly met it. And so you say putting on evidence is your client taking the stand and saying, I had permission, right? Yes. Once he does that, the government has to introduce evidence that says that's not true? Absolutely. I did want to make a few factual points. Mabry's testimony was largely consistent with Glover's testimony, but only Glover testified about the consent issue. You know, Glover said that he and his lady friend, Mullen, went out together to the sweepstakes the night before and then went back to the house together. Glover then took a shower at the house and spent the night with Mullen in a separate part of the house from Mabry. There was just no testimony they even saw Mabry that night. Then, when Mr. Glover woke up, Mullen was still asleep and Mabry was gone, and that's when he made the bad decision he did. I also want to make sure the court is aware of the layout of the house as far as we know from the transcript. So Mabry is in a wheelchair and enters the house through a door from the garage into his bedroom. He testified there's also a door from his bedroom to the kitchen, which always stays open. And then after the kitchen, there's the den and the living room in a separate part of the house, he said, which is where Mullen and Glover were sleeping. I also want to just emphasize, you know, there was no sign of forced entry to Mabry's house. And we're not dealing with a long period of time where Glover had consent. Again, Glover and Mullen went out together in the evening, they spent the night together at the house, and then Glover left in the morning. During that limited period of time, he had consent to be there. It was never revoked. The government has three arguments why they say there was sufficient evidence, but none hold water. Again, first, they rely upon the PSR. But again, we objected to the PSR and they could not rely on it. They argue, second, you can infer lack of consent from Mabry's testimony that Mullen did not know who took the gun. But she wouldn't know for sure. By all accounts, she was asleep. But that does not mean that she did not give Glover permission to be at the house. It just doesn't logically follow that because she didn't know who took the gun, she did not give Glover permission to enter. And if we think about it from Mullen's perspective, you know, she allowed Glover to stay over only to have him then steal Mabry's gun. That must have been mortifying for her. So, I mean, while I'm not breaking or entering. Let me ask you this about what evidence would be necessary. Say the evidence was just that the defendant was a stranger to the victim. I mean, it's hard to imagine a hypo because I think the answer to all these is the victim should just take the stand and say, I didn't give the defendant permission. Part of the appeal of your case relies on the sort of interrelationship between these people and the sort of inherent plausibility that your client might have had permission to be in the house. But imagine a hypo where it's implausible, right? Where, as far as I can tell, the defendant and the victim are completely unrelated to each other. They have no connection. There's no evidence the defendant has ever been in the victim's house. Would you really need the victim's testimony then? Or could you just say, based on, you know, common human experience, it's unlikely the person who's never been in the house was given permission to go in the one time they happened to steal something? I'll tell you this. I mean, in the thousands of transcripts that you've probably read and I've read in my career, regardless whether it's a stranger or somebody they know, the government always asks that question. The government... The victim on the stand and say, did you give Mr. So-and-so permission to be in your house? Yeah, it doesn't matter whether the person is related, you know, or a complete stranger. That is always there. And it's just not here. And we derive anything from the fact that he filed charges of breaking and entering? So, as to that, again, the government says he filed charges, right? But the testimony, if you look at Joint Appendix page 43, is that he reported the theft of his firearm. Not that he reported a breaking or entering. And then the government asked, quote, and that's when officers took out charges of breaking and entering and larceny of a firearm? And Mabry answered, yes, sir. So the testimony is not that Mabry pursued that charge. The testimony is that the police charged Mr. Glover with breaking or entering. But regardless, it is just a charging decision and nothing more. Well, I know, but my question really is circumstantial evidence. You would assume the government doesn't make up charges, that they derived it from Mabry in talking to him and came up with those charges. And it seems to me it points in that direction. There was also a question sustained where the question was whether the girl gave consent. And it was hearsay, so it was sustained. But you said she didn't because she was sleeping. It's not all perfect. I can see that. But I stand on my first answer then. This sort of goes back to the fundamental problem here is that paragraph 8 made those allegations. It said Mabry told police X. He said Mullen said Y. We objected to all of that because we are saying he entered with consent and that's not true. And then we testified at the hearing and the government didn't counter that. And the government did not counter even on this point that Mabry pursued charges. There's just no testimony of that. There's testimony that he lived next door. He didn't live in the house. There's testimony Mabry was not at the house. And there's testimony that the girl was asleep and didn't know he was there. Right. So from that, when he gets into the house, can't you infer he didn't have consent? I'm not sure if I'm following, but Mabry's in a wheelchair, remember? And so he testified that when he left that morning, he wheeled himself down the ramp from his room to the garage. And then when he came back, he came in the same way. He never testified. He looked in the rest of the part of the house. So he wouldn't know if Glover was there or not. Now, in terms of sleeping. Mabry clearly didn't give consent. Pardon? Mabry clearly didn't give consent. But the question is whether the girl could have consent and the testimony where she was sleeping the whole time and didn't know that Glover was there at all. Well, no. The testimony is that he was there already. He went out with it. You know, this was his lady friend. They went out together. They came back to the house together. And they slept together. And then, you know, in the morning, she was still asleep and he left. And there's really nothing to counter that. Anything else? No, thank you, Your Honor. I'll reserve the rest of my time for rebuttal. Mr. Noll. Thank you, Your Honor. Your Honor, may it please the court, Andrew Noll on behalf of the United States. As explained in our brief, we agree that the district court erred at imposing the challenged financial conditions of supervision for lack of adequate explanation. And that those specific conditions should be vacated. But the balance of Mr. Glover's sentence should be affirmed. And I'm happy to start with the four-point enhancement under Section 2K2.1 for the commission of another felony. Can I just really quickly on the Booker? I mean, I think on balance this judge probably made clear that it understood the guidelines were advisory. Does this happen a lot that judges after Booker say, I have to do things, the guidelines make me do things? I mean, like I said, I think I agree that taken as a whole, the colloquy makes clear the judge didn't think something that's contrary to Booker. But in your experience, does this happen a lot? And what can we do for district judges to stop saying this? Not in my experience, Your Honor. And in fact, most of the cases we cite, with the exception of a 2016 case, are from the several years, three to five years. Right. Booker is a long time ago now. Right. And so most of the cases are from that time period. There was a period of time in the early 2010s where some district courts, in light of this court's precedent, were making statements about whether they thought, in light of the standard of review and how this court was dealing with outside of the guideline sentences, that they were being forced back into the guidelines. And that compelled some statements, or goaded some statements by district courts that this court thought, suggested the court felt bound to apply a guideline sentence. But I'm certainly not aware of more recent cases. And I think, as you said, given the entire context of the sentencing transcript here, we think it's quite clear that the district court understood its discretion to depart, or vary downward from the guidelines. Great. Thanks. Go ahead. On the burglary issue, I want to emphasize that the district court, that first, although Mr. Glover objected to the PSR's conclusion that he had committed a burglary, his objection, which is on page 90 of the record, didn't actually specifically object to any of the specific factual findings in the PSR. And that's important with respect to Mabry's consent, because although his testimony at the sentencing hearing put into dispute Molden's consent, I don't think there's anything in the record that demonstrates that he clearly objected under Terry and made the affirmative, showing he needed to, to put into doubt Mabry's own consent. So I think the question at the sentencing hearing was whether Molden had given him consent. And I'd emphasize that the district court was able to evaluate the credibility of the competing testimony about the circumstances that day from Mabry and Glover, and about their own individual interactions with Ms. Molden, that allowed the district court to make a credibility determination about which version of events it believed. Can I go back to the Molden issue just for a minute? Do you have anything other than what strikes me as a very ticky-tacky waiver argument? I'm sorry, for the, which? Right, I'm having trouble with all the M's here. Yeah, the M's are complicated. The woman, the woman, not the homeowner, not the defendant, the third party, I guess that we can call her. Yeah, do we have anything other than what strikes me as a rather ticky-tacky waiver argument? In terms of finding by a preponderance. Why the government couldn't have just called this woman and asked her this obvious question. So my understanding, Your Honor, is that we, the government, didn't believe or understand that the argument from Mr. Glover would be that Molden gave him consent to be in the house. If you look at the PSR, this is on page, I believe, 88 of the PSR, Glover's statement to the police was that JM had regularly allowed him to be in the house. And that his objection, which is on page 98 of the record, just said, we object to the PSR's conclusion that Mr. Glover committed a burglary. So the government, I don't think, had any advance warning. Now, I mean, it seems, I'm sorry, given the overall facts of this case, the homeowner leaves, when he leaves, the defendant and this woman are both in the house. Really? You're really saying the government's not on notice that he might not try to argue that the woman who also lives in the house, who was in the house when the victim left, might have given him consent? That seems like one of the most obvious possibilities in the world. So we clearly thought Mabry, the argument was going to be about Mabry's consent, again, consistent with what was reported in the PSR. But I don't think that Molden's presence at the sentencing hearing was necessary for the court to find by a preponderance of the evidence that Glover did not have consent that day. Because, again, Mr. Mabry testified to his own interactions with Ms. Molden on the day of the robbery, which included seeing her asleep both before and after he left and entered the home. He also testified to the fact that a week prior to the incident, Glover had asked him to borrow the firearm, and he had said no. He also testified... I mean, that's really powerful evidence that Glover doesn't have permission to take the firearm. That's great evidence in favor of larceny. Right, but I think it also indicates some motive on Glover to enter the house to steal it, and I think it at least supports in a circumstantial way the district court's conclusion, specifically after hearing both Mabry and Glover testify and able to evaluate the credibility of their various accounts, of their interactions with Molden. No, Mabry actually did testify. He maybe didn't have the... It wasn't objected to, but he did say that... Was she awake when the defendant entered the residence? And he says no. And then he explains why he said no, because she was asleep when he left, and she was asleep when he came back, and he hit her with the newspaper. So he drew that conclusion, but nobody objected to it. There is a gap that Judge Heitens has pointed out, but it seems to me there is direct testimony that she was asleep when he entered. I agree, and I think it does assume a conclusion. It does assume a conclusion that he did, in fact, enter during that period of time. But I think, again, the court could find that conclusion or draw that conclusion. Can I take a step back? Does the government agree with the defendant that the burden on the consent issue is on the government, not the defendant? So that is my understanding of North Carolina law, both based on the Mungro decision and State v. Myrick. I think that's the best I can give you, Your Honor, in terms of a clear statement, but I do think we had the burden to show that by a... But her monitoring is in this instance. Yes. I'd also emphasize the fact, though, Your Honor, and I think that the breaking and entering charges is actually quite probative, at least as a circumstantial matter, for the District Court to credit Mr. Mabry's testimony. I mean, the PSR pointed out that after the firearm was stolen, there was a series of text messages between Molden, Glover, and Mabry, all of which took place before the theft was reported to police, and then thereafter, police took out a breaking and entering charge. And so I think all of that, again, given that the court had the testimony live in court of Mr. Mabry and Mr. Glover, the court could make a credibility determination and figure out which series of events it found most, you know... North Carolina uses sort of the modern burglary where breaking doesn't really mean breaking in any actual sense. It means like opening a door when you're not supposed to. Yes. In fact, the statute used the disjunctive breaking or entering, and I think we cite in our brief clear case law that suggests you merely have to enter under North Carolina law to violate the statute. This was a guilty plea. What did he plead guilty to? He pleaded guilty to unlawful possession of the firearm that he stole. How about the breaking and entering? So there was no specific plea agreement, so there was no articulation of statement of facts at the plea hearing. He agreed that he, in fact, possessed the firearm, which he did, because I think there's no dispute. He took it and pawned it, but the surrounding circumstance about the breaking and entering weren't relevant to the 922-G1 charge, at least the elements of that charge. But so on Judge Floyd's question, when there was like a factual proffer at the guilty plea hearing, there was not, he went into this place that he wasn't authorized to be or anything like that. That's right, and there wasn't a very clear factual proffer at the hearing other than the date, which is clear from the indictment, upon which the defendant stole, possessed the firearm. The only other point I wanted to make, Your Honor, is to the extent that there's a concern about the district court's finding here, which counsel didn't raise, but I think it's quite clear that on pages 53 to 55 of the joint appendix, that's the kind of colloquy that the government gave right before the district court overruled Mr. Glover's objection. The government went through the facts both in the PSR and from Mabry's testimony and the reasonable inferences that can be drawn therefrom to show that there was not consent for Mr. Glover to enter the home, and it was after that colloquy that the district court overruled the objection. So I think the court could find by a preponderance of the evidence, perhaps not the perfect evidence, but preponderance of the evidence and the competing testimony at the hearing that Mr. Glover in fact committed a robbery. I'm happy to answer the court's questions on any of the other issues that were raised in the briefs. Thank you, Mr. Noll. Thank you. Mr. D. Simonone. Thank you, Your Honor. I want to make four points. First, as to what the government just said in terms of how we did not object, we only objected to the legal conclusion and not the facts, and that is just not true. If you look at page 98 of the joint appendix, the objections, paragraph 8, which is the factual recitations, it says the defendant objects to the recitation of facts as to what happened on or about March 13, 2020. That's the factual objection. He admits to possessing the firearm. However, he contends the firearm was not obtained as a result of him breaking and rendering Mabry's house. So that's the legal. So we both contested the facts and the law. I also want to point out, you know, we don't really know why Mabry thought Mullen was asleep. If he heard no sounds from that separate part of the house, it's totally reasonable for him to infer she was asleep. And it doesn't appear he was aware Glover slept over with Mabry. There's just no testimony about that. But even if he wanted to somehow infer... He did testify that she was asleep, and he woke her up when she came, and she was asleep before he left. And he makes the conclusory statement she was asleep the whole time. Right, right. He didn't testify that he checked the rest of the house. And, you know, this is, again, his next-door neighbor, a regular guest, and Mullen's significant other. I do want to make a couple points. One about the Rogers Singletary. Two points about the Rogers Singletary, actually. I think the parties in court probably assumed that the district court was talking about the operative standing order when it named a particular order. Actually, the court named SO8. Yes. And I was going to ask this question. It seems to me everybody sort of conceded there's a problem there. My real question, if we were going to explore that, is SO8 was a standing order that was no longer operative. But it did include that condition. And the court incorporated SO8 when the standing order... I don't know how many months before it had been changed, but SO5. And, of course, the condition was deleted from that. But my question would have been, can't the court incorporate a standing order that had been around for a long time and just changed a few months before and refers specifically to SO8? The problem is it was five months before. And there's only ever one standing order in place at one time. Oh, that's all legitimate. In terms of in the party's minds, like when this happens in court, that's what they assume. And probably it was just a slip of the tongue. They probably didn't realize it. I think this judge is a very experienced judge. And I think he had been using the standard orders for years, which were SO8. The other problem is while it probably had he been conscious that there was the new standing order, we might have had a different scenario. But he did explicitly refer to SO8, which had the condition. My only question is whether that would be sufficient information to tell the defendant the conditions of SO8. No, because there was no notice. And that's the problem because of what was in it. SO8 was a notice. And if you look at the court's website, you can't find it. You have to know the exact URL to put in or do a Google search for it. But you can't find it from the district court's website. My clerk said he found it right away today. My question is, what was the status when it was within a few months of when there was a changeover? The question is whether they were both up. I do not believe they were. There's nothing in the record to suggest that. One more minute to just make one final point. I'm going to Judge Hyten's question. In terms of the Booker, I urge this court to look at United States v. Mendoza-Mendoza. That case involved the very same district court judge and the very same government arguments as here, that the sentencing transcript as a whole showed no Booker error because the district court elsewhere referenced Booker, said the guidelines were advisory, and analyzed the 3553A factors. But this court rejected those arguments. It said that the defendant's reading of the transcript that the district court felt bound was, quote, at least as plausible to us as the government's reading. But it was not, so it reversed. And I urge it to do the same thing here. Thank you very much, Your Honor.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd